**Michelle TODD, an infant by her next of friends, Michael and Loretta TODD, Plaintiff–Appellant,**

**v.**

**Ray T. SORRELL, Defendant–Appellee.**

No. 87–3806.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1987.

Decided March 4, 1988.

Joan Ann Delise (Susanna B. Ehrlich, Legal Services of Northern Va., on brief), for plaintiff-appellant.

Roger Lewis Chaffe, Sr. Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen. of Va., Pamela M. Reed, Asst. Atty. Gen., on brief), for defendant-appellee.

Before WIDENER and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WIDENER, Circuit Judge:

The plaintiff, Michelle Todd, appeals from an order of the district court denying a preliminary injunction to require the Commonwealth of Virginia to continue the preauthorization of funds for a liver transplant needed by the plaintiff. We reverse.

At the time of her request for an injunction, Michelle was a four-year old girl resid-

ing with her parents in Arlington, Virginia.[1] She suffered from secondary biliary cirrhosis of the liver, a condition that developed after 85% of her liver was removed due to a cancerous tumor. Although the cancer was completely eliminated, Michelle's life was subsequently threatened by cirrhosis. It was undisputed that Michelle needed a liver transplant as soon as possible in order for her to have a chance for survival.

Michelle was on the waiting list for a liver at the Children's Hospital of Pittsburg and had been accepted for a transplant by the hospital; however, that hospital will only undertake a transplant if adequate payment has been assured. Michelle was eligible for Medicaid, and had been assured by the United States that the United States would reimburse Virginia for the federal share of any funds paid out to cover the operation. The Commonwealth refused to fund Michelle's surgery, however, on the ground that she failed to meet the criteria adopted by Virginia for funding of liver transplants. Specifically, the Commonwealth took the position that Michelle was ineligible for funding because her liver dysfunction was caused by secondary biliary cirrhosis rather than extrahepatic biliary atresia, as specified in the Virginia evaluation criteria. Michelle then brought this action, alleging that, as applied to her, the Virginia liver transplant criteria violate various federal statutes, regulations, and the United States Constitution.

The district court entered a temporary restraining order, ordering Virginia to preauthorize funding for Michelle's surgery. This action was based on an affidavit by Doctor William Treem, Michelle's treating physician, an associate professor at Georgetown University Children's Medical Center, stating that Michelle would die without an immediate transplant. The district court dissolved its temporary restraining order two days later, though, and denied a temporary injunction after a hearing which also included affidavits from defendant Raymond T. Sorrell, Director of the Department of Medical Assistance Services for the Commonwealth of Virginia, and Doctor Robert L. Carithers, a physician at the Medical College of Virginia. An injunction pending appeal was then granted by a single circuit judge, the writer, based on the foregoing affidavits plus an additional affidavit by Dr. Treem. Leave was given to the Commonwealth to file another affidavit which was submitted by Dr. Carithers.

We think the district court erred in refusing to grant the preliminary injunction. Undoubtedly the harm to the plaintiff would have been enormous, indeed fatal, were the injunction denied, and the harm to the Commonwealth if granted, while it may not have been negligible, was measured only in money and was inconsequential by comparison. The public interest being evenly balanced (due to the limited number of livers available), the crux of the case under the likelihood of success standard is the district court's finding that Michelle had little chance of success on the merits under *Blackwelder Furn. Co. v. Seilig Mfg. Co. Inc.*, 550 F.2d 189 (4th Cir.1977).[2]

1. While this appeal was pending, Michelle underwent a liver transplant at the Children's Hospital of Pittsburg. Tragically, Michelle died a short time after the procedure. According to press reports, the first liver she received was defective and she died after a second transplant was performed. This case is not made moot, however, since the question remains as to the cost of the operation.

2. Bearing in mind that the appeal is from the district court's refusal of temporary relief, an alternate and equally valid ground for our decision is Part III of *Blackwelder*, in which we adopted the test from *Sinclair Refining Co. v. Midland Oil Co.*, 55 F.2d 42 (4th Cir.1932), as follows:

"It is sufficient [to grant the motion] if the court is satisfied that there is a probable right and a probable danger, and that the right may be defeated, unless the injunction is issued, *and considerable weight is given to the need of protection to the plaintiff as contrasted to the probable injury to the defendant.*" 550 F.2d at 193 (italics added by the *Blackwelder* court). We reasoned that in such a case, as here, of a decided imbalance of hardship in plaintiff's favor, then the likelihood of success test should be displaced by the formulation from *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740, 743 (2d Cir.1953), which is that to issue a preliminary injunction "It will ordinarily be enough that the plaintiff has raised questions

The Commonwealth listed eight criteria for selecting patients eligible for funded liver transplants:

1. The patient is under 18 years of age, and has a diagnosis of extrahepatic biliary atresia;

2. Current medical therapy has failed and will not prevent progressive disability and death;

3. The patient does not have other systemic disease, including but not limited to, severe cardio/peripheral/cerebrovascular disease, active systemic infection, renal dysfunction, severe pulmonary hypertension;

4. There is every reasonable expectation that there will be strict adherence by the patient to the long-term medical regimen which is required;

5. The LT is likely to prolong life, and to restore a range of physical and social function suited to activities of daily living;

6. The patient is not in both an irreversible terminal state and on a life support system;

7. The patient does not have multiple uncorrectible severe major system congenital anomalies;

8. A facility with appropriate expertise has evaluated the patient, and has indicated willingness to undertake the procedure.

It is unquestioned that Michelle met criteria 2 through 8 and that the sole reason for the Commonwealth's refusal to fund Michelle's transplant was the fact that her need for a liver resulted from secondary biliary cirrhosis, and not extrahepatic biliary atresia. The plaintiff has cited numerous statutory provisions in support of her claim that Virginia's requirement that liver transplant patients suffer from extrahepatic biliary atresia is invalid under federal law, and she has urged us to strike down that part of the criteria. We are mindful that other courts faced with similar situations have dealt with the validity of the state medicaid regulation at issue, and not the individual's suitability for the surgery.[3] One of Michelle's primary contentions is that 42 U.S.C. § 1396b(i)(1)(A) requires that the States which choose to fund organ transplants treat similarly situated individuals alike. She argues that Dr. Treem's affidavit establishes that she is similarly situated to a child with extrahepatic biliary atresia, and that the regulation barring her from funding solely because she does not have extrahepatic biliary atresia violates 42 U.S.C. § 1396b(i)(1)(A). Without expressing any opinion on the validity of Virginia's criteria, we take a somewhat different tack and hold that Michelle was entitled to state funding for her transplant on the ground that she falls within the Commonwealth's eligibility requirements.

Dr. Treem's affidavit states that Michelle was suffering from secondary biliary cirrhosis. Most significantly, he states that "Michelle's present condition of secondary biliary cirrhosis is identical to that of a child with biliary atresia. A biopsy of Michelle's liver would probably be virtually indistinguishable from that of a child with biliary atresia. Thus, medically speaking, Michelle is similarly situated to a child with biliary atresia."[4]

---

going to the merits, so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." 550 F.2d at 195.

Here, there is a probable right and an undoubted danger, and the need of protection to the plaintiff outweighs any probable injury to the defendant. We also think the plaintiff raised questions going to the merits that were so serious, substantial, and doubtful as to warrant more deliberate investigation.

3. See, e.g., *Allen v. Mansour*, 681 F.Supp. 1232, (E.D.Mich. 1986), in which the court stated that

The essence of this action is the reasonableness of the DSS patient selection criteria. Throughout the proceedings, the defendant has attempted to shift the focus of the litigation from this issue to Allen's medical suitability for a liver transplant. What is at issue is not Allen's suitability but rather the criteria used in making the suitability determination. Thus, the court concentrates on the patient selection criteria. If they are arbitrary or unreasonable, the court must find that the criteria violate Medicaid standards.

4. Dr. Carithers' affidavit does not disagree with this statement of Dr. Treem, but concludes that because a part of Michelle's liver had been removed, she was not comparable to a biliary atresia patient.

**90**

Under the Comprehensive Omnibus Budget Reconciliation Act of 1985, the Social Security Act was amended so that States were authorized to receive federal payments for organ transplants. However, in order to receive those funds, the State must adopt a plan providing written standards respecting coverage of transplants which treat similarly situated individuals alike. 42 U.S.C. § 1396b(i)(1)(A) (1986). An overly literal reading of Virginia's requirement that liver recipients suffer from extrahepatic biliary atresia would clearly conflict with the above statutory provision. We do not have to reach that question, because we feel that, as a matter of law, Michelle was in substantial compliance with the Virginia liver transplant criteria, and so was eligible for transplant funding. Michelle met seven of the eight criteria plainly, and the effect of her cirrhosis on her liver is "virtually indistinguishable" from that which the effect of biliary atresia would be. We hold, then, that a transplant candidate, such as Michelle, who substantially complies with Virginia's liver transplant criteria, qualifies for funding.

We conclude that Michelle, as a patient similarly situated to one with extrahepatic biliary atresia, was in substantial compliance with Virginia's liver transplant criteria, and hence was eligible for state funding for her transplant operation and likely to succeed on appeal.

The order appealed from is accordingly REVERSED.