**Brandy ELLIS, A Minor, By Next Friend, Barbara ELLIS**

v.

**Walt PATTERSON, In His Official Capacity as Director of the Arkansas Department of Human Services; Arkansas Department of Human Services.**

No. LR–C–88–542.

United States District Court,
E.D. Arkansas, W.D.

Aug. 15, 1988.

Marilyn Rauch, Jean Turner Carter, Legal Services of Arkansas, Little Rock, Ark., for plaintiff.

Debby Thetford Nye, Gen. Counsel, Dept. of Human Services, Little Rock, Ark., for defendants.

**ORDER**

EISELE, Chief Judge.

Pending before the Court is plaintiff's motion for a temporary restraining order,

preliminary injunction, permanent injunction, and declaratory judgment, filed on Tuesday, August 9, 1988. Defendants were served with copies of the pleadings on the same day of filing. They have now had the opportunity to briefly respond. On Tuesday afternoon the Court opened the hearing on the TRO via telephone to determine the issues and organize a schedule for resolution of the motion. At that time the Court requested that the attorneys prepare their research and present it during a continuation of the hearing on the following afternoon. On Wednesday, August 10, the Court reopened the proceedings, again by telephone conference. Although the Court suggested moving directly to a hearing on the merits, defendants noted that they were not prepared to stipulate to plaintiff's immediate need for a liver transplant, or to plaintiff's medical condition at all. The Court suggested that the parties cooperate as necessary to immediately permit defendants to determine whether plaintiff's medical condition would be a disputed factual issue. The Court further requested that the parties compile by Friday, August 12, 1988 whatever other factual evidence they wished to have in the record (in anticipation of immediate appeal by the non-prevailing party), and prepare a summary of their respective legal positions. Another hearing was then set for Friday, August 12. By that time the Court had received short briefs from each party, and the defendants had determined not to contest plaintiff's medical condition. At the conclusion of the August 12 hearing the Court ruled that, unless the State's plan is changed to cover liver transplants[1], the plaintiff's case must fail. It decided to immediately issue its final judgment on the merits, concluding that it was dealing only with questions of law and that time was of the essence. And it was clear to the Court that its decision, whatever that might be, would not end the matter. The parties will obviously be looking to the Court of Appeals or the United States Supreme Court to ultimately resolve the issues.

The pending motions arise out of a tragic factual situation. Plaintiff is a ten month old baby girl who suffers from biliary atresia, a fatal liver condition. Plaintiff attached an affidavit of Brandy's attending physician, Dr. Stephen Fiedorek, to her pleadings. The affidavit sets forth the seriousness of plaintiff's condition, chronicling her history of blood, bone, growth, and nutritional difficulties which have been the product of the liver disease. Plaintiff's doctor has concluded that if plaintiff does not receive a liver transplant, she will not live more than two months. Meanwhile, she is daily at risk of any number of sudden, life-threatening complications. Plaintiff has been evaluated for a liver transplant at the University of Nebraska Medical Center, where she was determined to be a medically appropriate candidate for the surgery. Before the University will put plaintiff on the list of patients waiting for livers, however, it requires either a $110,000 deposit, or proof of adequate insurance reimbursement for the procedure.

Plaintiff receives Supplemental Security Income as a disabled child; therefore she also receives Medicaid from defendant Arkansas Department of Human Services (DHS). DHS, does not under its plan provide, and has never provided, funding under its Medicaid program for liver transplants, or their related costs. Because Medicaid will not fund plaintiff's liver transplant, and plaintiff has neither alternative insurance coverage or a means of raising $110,000, the University of Nebraska Medical Center has refused to officially and permanently place her on the waiting list for a transplant. Thus arises this case.

To provide some statutory and regulatory background: Medicaid is a cooperative state and federal program, governed initially by the Medicaid statute, 42 U.S.C. § 1396, *et seq.* and regulations promulgated thereunder at 42 C.F.R. 430, *et seq.* and further by the specifics of the Medicaid

---

1. If the defendants were to amend their plan to fund liver transplants, but that funding did not, in fact, permit eligible patients to receive those transplants, the case of *Montoya v. Johnston,* 654 F.Supp. 511 (W.D.Tex.1987) could surface as an important one. This Court will not, however, address those issues on an anticipatory basis.

"plan" which each participating state must develop and submit to the Health Care Financing Administration (HCFA) of the U.S. Department of Health and Human Services (HHS) for approval. The purpose of the statute is to:

enabl[e] each state, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance.

42 U.S.C. § 1396.

42 C.F.R. 440.210 provides that the State plan must, at minimum, specify that the categorically needy (of which Brandy is one) are provided certain services, which are specified at sections 440.10 through 440.50 and 440.70. These services include: inpatient hospital services (440.10), other laboratory and x-ray services (440.30), and physicians' services (440.50).

At 42 C.F.R. 440.230 the regulations provide:

(a) The plan must specify the amount, duration, and scope of each service it provides for—

(1) The categorically needy;

(b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under ss. 440.210 ... to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.

(d) The agency may place appropriate limits on a service based on such criteria as medical neccesity or on utilization control procedures.

At section 440.240, the regulations add that the services available to any individual in the categorically needy group must not be less in amount, scope, or duration than those available to members of the medically needy recipient group, and further, that services available to anyone in either group be equal in amount, duration, and scope to those available to all other recipients within the group.

Finally, 42 U.S.C. § 1396b(i) discusses payments for organ transplants as follows:

Payment under the preceding provisions of this section shall not be made—

(1) for organ transplant procedures unless the State plan provides for written standards respecting the coverage of such procedures and unless such standards provide that—

(A) similarly situated individuals are treated alike; and

(B) any restriction, on the facilities or practitioners which may provide such procedures, is consistent with the accessibility of high quality care to individuals eligible for the procedures under the State plan; or

Nothing in paragraph (1) shall be construed as permitting a State to provide services under its plan under this subchapter that are not reasonable in amount, duration, and scope to achieve their purpose.

Plaintiff claims that defendants' Medicaid program violates the Medicaid Act and regulations by:

1. failing to provide necessary medical services to plaintiff and others similarly situated;

2. denying coverage to plaintiff in an amount, duration, and scope to reasonably achieve the purpose of the Act;

3. denying mandatory services under 42 C.F.R. 440.210 to plaintiff and other categorically needy recipients who have fatal liver disease;

4. discriminating against plaintiff and others similarly situated on the basis of diagnosis, type of illness, or condition;

5. discriminating against plaintiff and other categorically needy recipients who have fatal liver disease and need a transplant.

As relief for these violations, plaintiff seeks a preliminary and/or permanent injunction requiring defendants to make appropriate arrangements with the University of Nebraska Medical Center (Med Center) to assure that plaintiff is financially approved for a liver transplant operation, including prior authorization. These remedies are pursued under 42 U.S.C. § 1983.

As plaintiff's arguments are thoroughly described in her first submissions to the Court, they will be only briefly summarized here. In support of her claims, plaintiff relies on several of the statutory and regulatory provisions already set out here, as well as cases in the Eighth Circuit and other jurisdictions.

Most significantly, plaintiff affirmatively argues that 42 C.F.R. 440.230(c), as reiterated by several cases, including two in the Eighth Circuit, prohibits a state, once its Plan authorizes payment for a particular service, from arbitrarily deciding that some but not all eligible recipients in need of the service shall be funded, or that some but not all categories of the service will be funded. See, *Meyers v. Reagan,* 776 F.2d 241 (8th Cir.1985); *Todd v. Sorrell,* 841 F.2d 87 (4th Cir.1988); *Mitchell v. Johnston,* 701 F.2d 337 (5th Cir.1983); and *Lee v. Page,* # 86–1081–CIV–J–14, slip op. (M.D.Fla. Dec. 19, 1986).

Plaintiff also argues that defendants have violated this regulation (and presumably 42 C.F.R. 440.240) by providing some transplants but not others (that is, funding corneal and renal transplants, but not liver transplants). Alternatively, she argues that defendants have violated 42 C.F.R. 440.230(c) by not providing hospital, physician, and lab services for eligible recipients whose only hope for recovery requires a transplant, thereby arbitrarily denying a required service solely because of the type of illness.

Finally, plaintiff reviews 42 U.S.C. § 1396b(i) and argues that the language "Nothing in paragraph (1) shall be construed as permitting a state to provide services under its plan under this subchapter that are not reasonable in amount, duration, or scope necessary to achieve their purpose" sets a minimum standard; that is, it *requires* defendants to fund liver transplants because they are a medically necessary treatment for eligible recipients such as plaintiff. Plaintiff reads this language not as indicating that transplants are an optional service which a state must provide, but only as setting out additional standards which a state must meet before the federal government will match the state's funds for organ transplants.

In response to plaintiff, defendants argue that almost all cases on which plaintiff relies are readily, and importantly, distinguishable because they arise out of programs in which the refused service, be it transplant (*Todd, Montoya*), physical therapy (*Meyers*), or dental work (*Mitchell*), was *voluntarily* offered by the state as part of its Medicaid plan, and the plaintiff in each case complained about the refusal to fund the same service in his own case, or some variation within that service.

They also contend that the language addressing organ transplants at 42 U.S.C. § 1396b(i) must mean that *if* a state chooses to fund organ transplants (thereby implying that such funding is not mandatory), it must formulate certain standards which insure that those transplants will be equitably and rationally and appropriately performed, or else the federal government will not participate in those transplants with its matching funds. Defendants have presented the Court with legislative history, the House Report No. 100–391(1) for the Omnibus Budget Reconciliation Act of 1987 which discusses this section of the Act. That report states, at page 532, U.S.Code Cong. & Admin.News 1987, 2313–1, 2313–352:

> Under current law, States must offer certain "mandatory" services, such as inpatient hospital and physicians' services, each of which must be sufficient in amount, duration, and scope to reasonably achieve its purpose.... To assure that State coverage decisions for organ

transplant are based on clear principles consistently applied, and not on political or media considerations, section 9507 of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), P.L. 99–272, requires that *a State which* covers organ transplant procedures · set forth under its Medicaid plan written standards respecting coverage of such procedures. (Emphasis added). .

Defendants infer from this language that while some services are mandatory, a state may choose whether to cover transplants, and if it does so, it must comply with certain procedures.

In short, defendants arguments rest entirely on the statute and regulations to find that if a state chooses to participate in the cooperative Medicaid program, it has the authority to design and implement its own Medicaid plan, provided certain minimum services are covered, and appropriate federal approval are granted. Defendants contend that the statute and regulations *imply* that organ transplants are an optional service which a state may choose to provide, rather than a subset of the various mandatory services which a participating state must cover.

Attorneys for both sides have labored admirably under the pressure of this emotionally and intellectually demanding case. The Court is convinced, however, that plaintiff's theory and arguments, while appealing, do not satisfactorily address the central issue here, which is, the extent of the state's authority to develop and implement its own plan for providing medically necessary services for eligible recipients. More specifically, does the state have the discretion not to fund any organ transplant procedures? If so, may it choose to fund certain organ transplant procedures and not others? The Court concludes that the answer to both questions is "yes". The state does have this authority, although the Court acknowledges that several cases, even in the Eighth Circuit, *appear* to have held to the contrary, or at least to have limited that authority rather more than this Court believes the Medicaid statute intend-

ed. This Court's conclusion is reached for the following reasons.

As the defendants have pointed out, all but two of plaintiff's cases are distinguishable for having a very different factual origination than the one at bar. They began with the state having approved an optional or transplant service, but then having denied the specific plaintiff that service. Arkansas, however, has never approved funding for liver transplants. It cannot, therefore, be said to be treating plaintiff differently from other eligible recipients with fatal liver disease. Nor is this Court willing to say that all potential organ transplant recipients should be considered to be in one class denominated "organ transplant recipients" in order to find that 42 C.F.R. 440.240 has been violated by defendants' funding of corneal and renal transplants but not liver transplants. Clearly there are organ transplants and there are organ transplants. A corneal transplant, for instance, deals with a non-life threatening situation and is otherwise in an obviously different category than liver transplants.

The two cases which are closer to the factual situation of the one at bar are *Lee, supra,* and *Pinneke v. Preisser,* 623 F.2d 546 (8th Cir.1980). In *Lee* a Florida resident with fatal liver disease alleged that Florida, by not funding any liver transplants, was in violation of the Medicaid Act. The district court in that case agreed, and required Florida to cover liver transplants in the same manner in which the State provides for other covered services, and make payments just as the State does for any other covered treatment. The Court found that "federal statute and regulations require that all medically necessary services be covered", and that while certain limits may be imposed for fiscal reasons (the "utilization control" provision of 42 C.F.R. 440.230(d), the state cannot totally refuse to cover one service while covering others, etc., for purely fiscal reasons. This Court's reasons for disagreeing with the Florida Court on these holdings will be explained shortly. The cases are distinguishable, however, because the defendant in *Lee* apparently did not even argue that the liver

transplant was not within the category of "mandatory" Medicaid services. Thus the *Lee* Court never had an opportunity to review and address that argument, as we have here.[2]

The second case which we must address is *Pinneke*. This Eighth Circuit decision held that plaintiff, a transsexual, was entitled to coverage for his sex-change operation, because it was "medically necessary", as the "only available treatment known at this stage of the art for a particular condition". The Court found that to exclude coverage in this case would be an arbitrary denial of benefits based solely on the "diagnosis, type of illness, or condition." This Court finds that the *Pinneke* decision does not bar a finding that organ transplants are not covered unless the approved plan specifically so provides. Organ transplants are singled out from ordinary medical procedures. See 42 U.S.C. § 1396b(i). They are optional. Sex change operations, however, fall into no other category than the *mandatory* "in-hospital, physicians' services, and lab services" categories set out in the regulations. The defendants in *Pinneke* made no attempt to argue otherwise. In addition, defendants' argument for not funding the operation was that it was not a *necessary* medical procedure. The Court's obligation in *Pinneke*, then, was simply to determine whether it was a medically necessary procedure. Defendants made no further argument against covering it. Again, that is not the situation in the case at bar.

The Court recognizes that there is legitimate room for disagreement between the parties here. The Medicaid statute is not without ambiguity, and the case law interpreting the statute has exacerbated this problem. The purpose of the statute is set out in 42 U.S.C. § 1396. It *is*, as plaintiff and the cases repeatedly contend, to provide necessary medical care for those who are eligible for the assistance. *However*, there is much in the language of the statute and regulations evidence to support the conclusion that some assistance was meant by Congress to be limited. Again, at 42 U.S.C. § 1396, note the opening language: "For the purpose of enabling each State, *as far as practicable under the conditions in such State* " (emphasis added). As the *Pinneke* case makes clear that political considerations are not proper grounds for limiting coverage, the Court is left to assume (because it has found no cases clarifying it) that this language was intended to recognize that states have varying fiscal capabilities, as well as varying Medicaid population needs, and that each state must therefore have a certain amount of flexibility in best spreading its financial resources among its eligible population. As long as that spreading is done on a rational basis, it would seem to comport with the purpose of the statute.

Furthermore, logic dictates the conclusion that *not all* medically necessary treatment must be covered by Medicaid, despite so many broad statements in the cases to that effect. The regulations at 42 C.F.R.

---

2. In *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), Mr. Justice Powell, writing for the majority, stated:

Pennsylvania's regulation comports fully with Title XIX's broadly stated primary objective to enable each State, as far as practicable, to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services. See 42 U.S.C. ss. 1396, 1396a(10)(C) (1970 ed., Supp. V). Although serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage, it is hardly consistent with the objectives of the Act for a State to refuse to fund *unnecessary*—though perhaps desirable—medical services.

If organ transplants were not dealt with specifically by the statute and regulations, it would be easier to argue that many of such transplants (including liver transplants under the circumstances of this case) would simply have to be covered under the general requirement to fund "necessary medical treatment", as suggested by *Beal*. Or, at least, it could be argued that all organ transplants that are medically necessary would have to be covered *unless specifically excepted* by the law. However, the 1985 and 1987 amendments to 42 U.S.C. § 1396b(i) make it clear, if it was not before, that it was the legislative intent to treat organ transplants differently. In 1977, when *Beal* was decided, most organ transplants were still in the "experimental" stage and could be treated as such under the law. So while *Beal* may have been the predicate for *Lee* type decisions and for the plaintiff's basic contention here, it, upon examination, fails to support plaintiff's position.

440.60 and 440.80 *et seq.* provide that a great many medically necessary services, such as dental services, physical therapy, and others are covered only at the option of the state.

A more limited argument concerning defendants' permissible discretion is that while certain services are mandatory, organ transplants may or may not be covered, as the state chooses. The Court believes that there is considerable support for this position. First, the 1985 and 1987 amendments to 42 U.S.C. § 1396b(i) as quoted earlier are read by this Court to mean that the state *may* cover the transplants, and if so, must set certain standards in order to obtain matching funds from the federal government. This is supported by at least two cases, which, while they do not address the arguments made by the defendants herein, are written with the assumption that the transplants are optional programs. In *Todd v. Sorrell* 841 F.2d 87 (4th Cir.1988) the Court stated:

> Under the COBRA of 1985, the Social Security Act was amended to receive federal payments for organ transplants. However, in order to receive these funds, the State must adopt a plan providing written standards. . . .

Since Medicaid is a cooperative program, assuming the matching of state and federal funds, it makes little sense to assume that a state would have been required to cover organ transplants *before* the federal government was prepared to match them, or to assume that states which do not submit standards for approval are nevertheless obligated to fund the transplants.

Language in the *Montoya* decision similarly indicates that that Court recognized liver transplants as an optional service: ". . . Texas voluntarily entered the federal Medicaid cooperative program and voluntarily recognized liver transplants as a covered service under Medicaid." 654 F.Supp. 511, 514 (W.D.Tex.1987).

■ Obviously this issue is emotionally charged. Who would not prefer to conclude that Brandy must receive a liver transplant? Nevertheless, it is the first obligation of this Court to find, and to clarify, and then to follow the law. Plaintiff has asked this Court to find the defendants in violation of the Medicaid statute. The Court cannot. Nor does the Court find the statute itself to be unconstitutional. To do so, using an equal protection contention under the Fourteenth Amendment, it would be necessary to conclude that plaintiff has been discriminated against because of her illness, or has been denied a right or privilege to which she is entitled. The Court certainly does not have before it anything to suggest that there has been any *purposeful* discrimination against plaintiff by the State. Nor does plaintiff so contend. Moreover, as a potential liver transplant recipient, plaintiff is not a member of a suspect class, and the Court is aware of no fundamental right to liver transplants, or even to life saving medical treatment. Thus only a rational basis for defendants' refusal to fund the transplants would need to be shown by defendants. As indicated above, the Court believes defendants *have* shown a rational basis for their decision. Nor can plaintiff make out a case of a violation of due process under the Fourteenth Amendment. Plaintiff has no liberty or property interest in funding for her liver transplant because, according to the Court's reading of the statute, 42 U.S.C. § 1396 *et seq.* has not entitled her to one. And again, there is no constitutional right to such treatment absent such an entitlement.

■ So, in summary, this Court, with considerable concern and not a little doubt, finds that states do have substantial discretionary authority under the Medicaid Act to devise and implement a Medicaid plan which equitably and efficiently serves the needs of its Medicaid eligible population, as long as the plan provides coverage for the mandatory services required by the regulations, and offers such other services as it chooses on a rational, non-discriminatory basis. The Court also finds, specifically, that organ transplants do not fall into the general, mandatory categories of service required to be funded, but rather may be covered by the state on an optional basis, although if the state chooses to cover any

or all transplant procedures, as for any other service, the state must formulate standards which insure that the coverage will be rational, and consistent among members of the covered group.

It is therefore ORDERED that plaintiff's motion for a temporary restraining order, a preliminary injunction, and a permanent injunction be, and it is hereby, dismissed.