DECISION
Plaintiff, Steven Jasset ("Jasset"), appeals from the decision of a hearing officer of the Rhode Island Department of Human Services ("DHS"), denying Medical Assistance ("Medicaid") coverage for binaural, i.e. two, hearing aids. Jasset seeks reversal of the decision, claiming that the policies upon which the decision was based are unreasonable, arbitrary and capricious, and contrary to federal law. DHS asserts that its policies are sound and that its decision, therefore, complies with the requirements of the Administrative Procedures Act and should be upheld. This Court has jurisdiction pursuant to G.L. 1956 § 42-35-15(g). For the reasons set forth in this Decision, this Court sustains Jasset's appeal, vacates the hearing officer's decision, and remands this case to DHS for further proceedings consistent with this Decision.
 Facts and Travel
In February of 2005, Jasset, a categorically needy recipient of Medicaid benefits in the State of Rhode Island, submitted to DHS a request for coverage for binaural hearing aids. Jasset suffers from moderate to severe sensory-neural hearing loss in both ears, accompanied by reduced ability in speech discrimination. (Pl.'s Ex. 7.) According to Jasset, his hearing has been deteriorating progressively for more than forty years and is, now, fifteen to twenty percent worse than it was ten years ago. (Pl.'s Ex. 10 at 5.) In the past, Jasset was prescribed binaural hearing aids. (Id. at 6-7.) Until receiving Medicaid benefits, however, he was unable to afford even one hearing aid. (Id. at 6.) Jasset, therefore, has never used a hearing aid. (Id.)
On April 7, 2005, DHS denied Jasset's application, having determined that he was ineligible for the requested service. (Pl.'s Ex. 3.) Subsequently, an administrative hearing was held at Jasset's request to determine whether he was eligible to receive binaural hearing aids. (Pl.'s Ex. 9.) On June 28, 2005, the hearing officer issued a written decision wherein she noted that Jasset's hearing loss and accompanying need for a hearing aid were uncontroverted and that DHS had testified that, were he to apply, Jasset would be approved for a single hearing aid. (Id.) The hearing officer then denied Jasset's application once more, relying on DHS's medical coverage policies for hearing aids from the DHS Durable Medical Equipment (DME) Provider Manual. (Id.)
According to the manual, "a hearing aid is covered when a recipient's hearing loss is such that it impairs daily living activities and the purchase of which would improve the recipient's quality of life." (Id.) Payment for binaural hearing aids, on the other hand, is only considered in the following cases:
 "Individuals 21 years of age and under, or; Individuals over 21 years of age who have been utilizing two hearing aids and now require replacement of the hearing aids, or; Individuals who are gainfully employed or are likely to become employed if the hearing problem is corrected, or; Visually impaired individuals."
(Id.)
The hearing officer noted that, at the time of the hearing, Jasset was fifty-three years of age and had never worn a hearing aid. (Id.) Further, the hearing officer concluded that because Jasset was unemployed and had "stopped working for reasons other than his hearing loss," it could not be assumed "that correction to his hearing would result in employment." (Id.) Finally, the hearing officer noted that Jasset made no argument against a finding that he was not visually impaired and did not wish to submit a report or exam for review. (Id.) Because Jasset met none of the policy requirements, the hearing officer denied his request for an exception to the policy based on medical need. (Id.) The hearing officer concluded that
 "[t]he policy clearly does not allow for approval based on medical necessity if the appellant does not first meet the policy requirements of the service he is requesting, namely binaural hearing aids. If the appellant had met one of the requirements needed for binaural hearing aids payments, only then would the agency have reviewed the request for medical necessity. The appellant's request for an exception to the policy is beyond the authority of this Appeals Officer."
(Id.)
On July 25, 2005, Jasset filed a timely appeal to the Superior Court. On appeal, Jasset argues that DHS's medical coverage policy for hearing aids is "unreasonable, arbitrary and capricious, and contrary to federal law" because "[t]he policy is insufficient in amount, scope, and duration to reasonably achieve its purpose," because the policy discriminates among the categorically needy, and does so based on age, and because the policy "constitutes an exclusionary list and bars recipients from seeking exceptions based on medical need." (Pl.'s Br. In Supp. of Reversal 9.)
In response, DHS argues that the denial of Jasset's request does not deprive him of medically necessary treatment. Rather, DHS maintains that because Jasset is entitled to a single hearing aid, the denial of Jasset's request for binaural hearing aids merely deprives Jasset of the treatment he desires. Furthermore, DHS asserts that it has the discretion to "choose the proper mix of amount, scope, and duration limitations on services covered by Medicaid" and that, as a result, its medical coverage policy for hearing aids represents sound Medicaid funding regulation. (Def.'s Resp. Br. In Supp. of Agency Decision 8 (quotingAlexander, 469 U.S. at 307).)
 Standard of Review
This Court's review of an administrative decision is guided by the provisions of R.I. Gen. Laws § 42-35-15(g), as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Ctr. forBehavioral Health, R.I., Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Wayne Distrib. Co. v.R.I. Comm'n for Human Rights, 673 A.2d 457, 459 (R.I. 1996) (citing Newport Shipyard, Inc. v. R.I. Comm'n for Human Rights,484 A.2d 893, 896 (R.I. 1984)). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co. v. Div. of Pub.Utils. Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Baker v. Dep't ofEmployment Training Bd. of Review, 637 A.2d 360, 363 (quotingMilardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). Questions of law are not binding upon the court and are reviewed de novo. Bunch v. Bd. of Review, R.I. Dep't ofEmployment Training, 690 A.2d 335, 337 (R.I. 1997). It is inherent in the power of this Court to order a remand to the administrative agency to "correct deficiencies in the record and thus afford the litigants a meaningful review." BirchwoodRealty, Inc. v. Grant, 627 A.2d 827, 834 (R.I. 1993) (quotingLemoine v. Dep't of Mental Health, Retardation Hosps.,113 R.I. 285, 290, 320 A.2d 611, 614 (1974)).
When an administrative agency endeavors to interpret its own rules or regulations, the agency's interpretation is entitled to great deference on appeal. Gallison v. Bristol Sch. Comm.,493 A.2d 164, 166 (R.I. 1985); see also Martin v. OccupationalSafety Health Review Comm'n, 499 U.S. 144, 150 (1991) ("an agency's construction of its own regulations is entitled to substantial deference"); Pawtucket Power Assocs. Ltd. P'ship v.City of Pawtucket, 622 A.2d 452, 456 (R.I. 1993) ("deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency . . . even when the agency's interpretation is not the only permissible interpretation that could be applied". Admittedly, this deference is not so absolute that it resembles "blind allegiance." Citizens Sav. Bank v. Bell,605 F. Supp. 1033, 1042 (D.R.I. 1985). Rather, "the true measure of the deference due depends on the persuasive power of the interpretation, given the totality of the attendant circumstances." Id. (citing Skidmore v. Swift Co.,323 U.S. 134, 140 (1944); Mayburg v. Sec'y of Health Human Servs.,740 F.2d 100, 105-06 (1st Cir. 1984)).
Moreover, it is well-established that a higher level of deference is owed when reviewing agency determinations of matters within the agency's specialized expertise. See R.I. HigherEduc. Assistance Auth. V. Sec'y, U.S. Dep't of Educ.,929 F.2d 844, 857 (1st Cir. 1991) (citing Lile v. Univ. of Iowa Hosps. Clinics, 886 F.2d 157, 160 (8th Cir. 1989); Bldg. Const.Trades Dep't, AFL-CIO v. Brock, 838 F.2d 1258, 1266 (D.C. Cir. 1988)) ("it is apodictic that a reviewing court should accord an agency's decision considerable deference when that decision involves a technical question within the field of the agency's expertise"). On the other hand, when an agency purports to interpret a rule or statute outside the purview of its expertise, the deference afforded need not be as broad. See Burns v.Sundlun, 617 A.2d 114, 117 (R.I. 1992) (rejecting request for remand to exhaust administrative remedies when the "question raised by plaintiff is a question of statutory interpretation outside the agency's area of expertise."
 ANALYSIS
DHS, an agency within the executive branch of our state government, is responsible for the management, supervision and control of numerous social service programs, including Medicaid.See G.L. 1956 § 42-12-1 et seq. Medicaid is a program of federal assistance designed to help participating states provide medical coverage to disabled individuals who do not possess the financial means to meet the necessary medical costs.42 U.S.C. § 1396; Harris v. McRae, 448 U.S. 297, 301 (1980). Rhode Island is a willing participant in the Medicaid program. See G.L. 1956 § 40-8-1.
Although state participation in the federal Medicaid program is entirely optional, once a state elects to participate, it must administer its program in compliance with federal law. Harris,448 U.S. at 301. Under federal law, recipients of Aid to Families with Dependent Children and Supplemental Security Income, known as the "categorically needy," must be provided with Medicaid benefits. 42 U.S.C. § 1396a(a)(10)(A)(i). Federal law requires that participating states provide certain "mandatory services," such as hospital and physician coverage.42 U.S.C. § 1396a(a)(10)(A), 1396d(a)(1)-(5), (17). Participating states may elect to provide additional coverage by offering other "optional categories of service," such as "prescribed drugs, dentures, and prosthetic devices." See 42 U.S.C. § 1396d(a)(6)-(16), (18). Rhode Island has elected to offer "optional categories of service," covering "durable medical equipment, prosthetics, orthotics and supplies," which include hearing aids. See 15 020 007 R.I. Code R. § 212, 224 (Weil 1997). ("Durable Medical Equipment . . . and Hearing Aids are benefits available to eligible recipients under the Rhode Island Medical Assistance Program"). Having chosen to offer these optional categories of service, Rhode Island has "bound itself to act in compliance with the [Medicaid] Act and the applicable regulations in the implementation of those services." Meyers v. Reagan,776 F.2d 241, 243-44 (citing Eder v. Beal, 609 F.2d 695, 702 (3d Cir. 1979)) ("[O]nce a state elects to participate in an `optional' program, it becomes bound by the federal regulations [that] govern it"). These services, therefore, "must be sufficient in amount, duration and scope to reasonably achieve their purpose."42 C.F.R. § 440.230(b).
In Rhode Island, "[a] hearing aid is covered [by Medicaid] when an [eligible] recipient's hearing loss is such that it impairs daily living activities and the purchase of which would improve the recipient's quality of life."[1] 15 020 007 R.I. Code R. § 232.8. Payment for a single hearing aid is conditioned solely on the basis of medical necessity. Payment for binaural hearing aids, on the other hand, is only considered in the following cases:
 "Individuals 21 years of age and under, or: Individuals over 21 years of age who have been utilizing two hearing aids and now require replacement of the hearing aids, or: Individuals who are gainfully employed or are likely to become employed if the hearing problem is corrected, or: Visually impaired individuals."
Id. § 232.9. In the case at bar, because he met none of these requirements, Jasset has been denied coverage for binaural hearing aids. DHS asserts that because "[t]he State is not limited in `the scope of its broad discretion to define the benefits package it will finance,' . . . its policy regulation is a sound decision regarding Medicaid funding." (Def.'s Resp. Br. In Supp. of Agency Decision 8 (quoting Pharm. Research Mfrs.Of Am. v. Walsh, 538 U.S. 644, 666 (2003))). This Court cannot agree.
In Pharm. Research, the United States Supreme Court held that "[t]he fact that a State's decision to curtail Medicaid benefits may have been motivated by a state policy unrelated to the Medicaid Act does not limit the scope of its broad discretion to define the package of benefits it will finance." 538 U.S. at 666. That is not to say, however, that a state's "discretion to define the package of benefits it will finance" is unbridled. The federal Medicaid Act "gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in `the best interests of the recipients.'" Alexander, 469 U.S. at 303
(quoting 42 U.S.C. § 1396a(a)(19)). The standards a state adopts for determining eligibility and extent of covered services must be "reasonable" and "consistent with the objectives of the [Social Security] Act," to help needy individuals "attain or retain capability for independence or self-care."42 U.S.C. § 1396, 1396a(a)(17).
The concept of "medical necessity" is the set measure — the touchstone — for evaluating the reasonableness of a participating state's Medicaid standards. Allen v. Mansour,681 F. Supp. 1232, 1237 (E.D. Mich. 1986). State Medicaid standards based upon factors not reasonably related to medical need are deemed arbitrary because they do not bear a "rational relationship to the underlying federal purpose of providing service to those in greatest need of it." White v. Beal, 555 F.2d 1146, 1151 (3d Cir. 1977). Thus, "[a]n agency policy [that] does not and cannot respond to medical need is arbitrary and capricious." Bristol v.R.I. Dep't of Human Serv., No. 95-6605, 95-6889, 1997 R.I. Super LEXIS 14, at *9 (Jan. 30, 1997).
Here, DHS has acknowledged that though its policy with regard to hearing aids, in general, is conditioned on medical necessity, its policy with regard to binaural hearing aids "has nothing to do with" medical necessity. (Pl.'s Ex. 10 at 12.) In her decision, the hearing officer concluded that "[t]he policy clearly does not allow for approval based on medical necessity if the appellant does not first meet the policy requirements of the service he is requesting, namely binaural hearing aids." (Pl.'s Ex. 9.) DHS's policy conditions payment for binaural hearing aids on factors not reasonably related to medical need. This Court finds, therefore, that DHS's policy with regard to binaural hearing aids, which does not respond to medical need, is arbitrary and capricious and in violation of Medicaid standards.See Allen, 681 F. Supp. at 1238.
DHS argues that its policy with regard to binaural hearing aids need not be based on medical necessity because, though Jasset has been denied the augmentation device of his choice, he has not actually been denied an augmentation device. (Def.'s Resp. Br. in Supp. of Agency Decision 7.) DHS, thus, has taken the position that one hearing aid satisfies "the general aim of assuring that [Jasset] receives necessary medical care." Alexander,469 U.S. at 303. This means that DHS has effectively adopted a single standard for the medical necessity of all hearing aids. In other words, DHS has determined a priori that binaural hearing aids, as opposed to a single hearing aid, are never medically necessary. In so doing, DHS has substituted its judgment for the congressionally prescribed case-by-case judgment of the individual treating physician. See Pinneke v. Preisser,623 F.2d 546, 549-550 (citing S. Rep. No. 404, at 1986 (1965)) ("the decision of whether or not certain treatment . . . is `medically necessary' rests with the individual recipient's physician and not with clerical personnel or government officials"). More importantly, however, DHS's determination that binaural hearing aids are never medically necessary illustrates that DHS's "policy regulation" may not be, contrary to DHS's assertions, "a sound decision regarding Medicaid funding." DHS argues that its policy with regard to binaural hearing aids permissibly discriminates among hearing impaired Medicaid recipients based on utilization controls. See Pinneke, 623 F.2d at 549 (quoting42 C.F.R. § 440.230(c)) ("Appropriate limits may be placed on services based on such criteria as medical necessity or those contained in utilization or medical review procedures.") Because this Court is not satisfied that binaural hearing aids are never medically necessary, however, this Court cannot determine whether DHS may so discriminate. See Allen, 681 F. Supp. at 1239 ("Procedures to promote utilization control cannot justify precluding funding of medically necessary procedures").
 CONCLUSION
In Beal v. Doe, 432 U.S. 438, 444-45 (1977), the United States Supreme Court held that "[a]lthough serious questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage, it is hardly inconsistent with the objectives of the Act for a State to refuse to fund unnecessary — though perhaps desirable — medical services." This Court is mindful, moreover, that "Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs."Alexander, 469 U.S. at 303. Nevertheless, after review of the entire record, this Court finds that DHS's policy with regard to binaural hearing aids, because it is not based upon factors reasonably related to medical need, is arbitrary. In addition, this Court finds that the factors upon which DHS's policy is based — age, prior use, vision, and employment — are unreasonable and violate Medicaid's comparability requirement that states provide an equal "amount, duration, [and] scope" of medical assistance to all categorically needy Medicaid recipients. See42 U.S.C. § 1396a(10)(B)(i); 42 C.F.R. §§ 440.240(a), (b)(1);Rodriguez v. City of New York, 197 F.3d 611, 615 (2nd Cir. 1999) ("states may not provide benefits to some categorically needy individuals but not to others"); Lankford v. Sherman,
2006 U.S. App. LEXIS 15567, at *18-19 (8th Cir. June 22, 2006) ("the comparability mandate . . . applies equally to mandatory and optional medical services"). This Court finds, therefore, that DHS's decision to deny Jasset coverage for binaural hearing aids was arbitrary and affected by an error of law.
That is not to say, however, that this Court finds that Jasset is entitled to coverage for binaural hearing aids. Jasset's hearing loss and accompanying need for a hearing aid are uncontroverted. It remains to be determined whether binaural hearing aids, for Jasset, are medically necessary or merely desirable but unnecessary medical services. Accordingly, this Court sustains Jasset's appeal, vacates the hearing officer's decision, and remands this case to DHS for further proceedings consistent with this decision, namely to adopt an appropriate policy with regard to binaural hearing aids — one that is reasonably related to medical need — and, in light of said policy, to reevaluate whether Jasset is entitled to the coverage he seeks.
[1] In Rhode Island, only categorically needy Medicaid recipients and Medicaid recipients in the Early and Periodic Screening and Diagnostic Treatment Program are eligible for coverage for a hearing aid. 15 020 007 R.I. Code R. § 232.8. Because the parties do not dispute that Jasset is categorically needy, however, this Court need not address the propriety of this limitation.