886 F.2d 194
 58 USLW 2195, 27 Soc.Sec.Rep.Ser. 113,
Medicare & Medicaid Gu 38,049
 Glenn C. WEAVER, T.G., and Mark Momot, individually and on
behalf of all others similarly situated, Appellees,
v.
Michael REAGEN, Director of the Missouri Department of
Social Services; and Jane Y. Kruse, Director of
the Missouri Division of Medical
Services, Appellants.
 No. 88-2560.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1989.
Decided Sept. 25, 1989.
Rehearing and Rehearing En Banc Denied Nov. 6, 1989.
 
 Bruce Farmer, Jefferson City, Mo., for appellants.
 Ann B. Lever, St. Louis, Mo., for appellees.
 Before FAGG, Circuit Judge, and ROSS and TIMBERS,* Senior Circuit Judges.
 ROSS, Senior Circuit Judge.
 
 
 1
 Appellees/plaintiffs Glenn Weaver, T.G., and Mark Momot are members of a class of Medicaid eligible individuals (plaintiffs) who are disabled by the disease Acquired Immunodeficiency Syndrome (AIDS). Plaintiffs filed suit against Michael Reagen, Director of the Missouri Department of Social Services, and Jane Kruse, Director of the Missouri Division of Medical Services (defendants) claiming that defendants had violated their statutory right to Medicaid benefits by denying coverage of the drug Retrovir (formerly known as azidothymidine or AZT) for treatment of their AIDS.[1] Finding that AZT was medically necessary treatment, the United States District Court for the Western District of Missouri granted plaintiffs' motion for summary judgment and enjoined Missouri officials from denying coverage of AZT to the plaintiff class. We affirm.
 
 I.
 
 2
 Caused by an infection with the human immunodeficiency virus (HIV), AIDS is characterized by a compromised functioning of the immune system, life-threatening opportunistic infections, neoplasia or the abnormal development of tumors, and a fatal outcome. Infection with the HIV virus involves various stages from testing positive for the AIDS virus, to AIDS-related complex (ARC), to the AIDS disease itself. According to the Centers for Disease Control guidelines, a diagnosis of AIDS is made when there is laboratory evidence of HIV infection coupled with certain indicator diseases or opportunistic infections. The indicator diseases include such conditions as esophageal candidiasis, Kaposi's Sarcoma, pneumocystis carinii pneumonia (PCP), HIV encephalopathy (AIDS dementia), or HIV wasting syndrome.
 
 
 3
 On March 20, 1987, the Food and Drug Administration (FDA) announced its approval of AZT under the brand name Retrovir, for the treatment of AIDS. The labeling approved by the FDA for AZT stated:
 
 
 4
 Retrovir capsules are indicated for the management of certain adult patients with symptomatic HIV infection (AIDS and advanced ARC) who have a history of cytologically confirmed Pneumocystis carinii pneumonia (PCP) or an absolute CD4 (T4 helper/inducer) lymphocyte count of less than 200/mm in the peripheral blood before therapy is begun.
 
 
 5
 At the time this action was filed on July 6, 1987, the State of Missouri did not provide any Medicaid coverage for AZT. Three days after the suit was filed, the Missouri Department of Social Services promulgated an emergency rule, providing Medicaid coverage of AZT under certain diagnoses or conditions. Adopted as a permanent rule with minor modifications effective November 12, 1987, Missouri regulations now provide coverage for AZT as follows:
 
 
 6
 The availability of the drug Zidovudine, formerly known as Azidothymidine, for Missouri Medicaid coverage shall be limited to only those eligible recipients for whom the prescribing physician has established a medical diagnosis of acquired immunodeficiency syndrome (AIDS) and who have a history of cytologically confirmed Pneumocystis carinii pneumonia (PCP) or an absolute CD4 (T4 helper/inducer) lymphocyte count of less than two hundred (200) per cubic millimeter in the peripheral blood before therapy is begun.
 
 
 7
 Mo.Code Regs. tit. 13, Sec. 70-20.110. This language is virtually identical to FDA's approval statement for the drug.
 
 
 8
 At the present time, the drug AZT is the only approved treatment of AIDS or ARC. While there are treatments for particular opportunistic infections which the AIDS patient may develop, AZT is the only approved drug which acts on the HIV virus itself.
 
 
 9
 Although plaintiff Glenn Weaver, who had suffered from pneumocystis carinii pneumonia (PCP), became eligible for Medicaid coverage of AZT as a result of the change in the Missouri Medicaid rules, the present action was continued when other plaintiffs were granted leave to intervene. The new plaintiffs suffered with AIDS and certain AIDS indicator diseases, but did not meet the restricted medical conditions necessary for coverage of AZT under Missouri's Medicaid rule (history of PCP or an absolute CD4 lymphocyte count below 200). For example, plaintiff Mark Momot was diagnosed as infected with the AIDS virus and suffering from oropharyngeal/esophageal candidiasis, an AIDS indicator disease, as well as significant diarrhea, fever, sweats and lymphadenopathy. In order to prevent or retard the progression of the disease to a more serious illness, his personal physician prescribed AZT. However, because Momot had no history of PCP and his CD4 count had not dropped below 200, Missouri Medicaid denied coverage of his AZT prescription because "he did not meet the diagnosis criteria set forth in the state regulation."
 
 
 10
 The case was submitted to the district court on cross-motions for summary judgment. On September 29, 1988, the district court granted plaintiffs' motion for summary judgment and certified the plaintiff class. 701 F.Supp. 717. The class so certified is defined as:
 
 
 11
 All persons in Missouri who would have or will be determined eligible for Medicaid and who are infected with the [AIDS virus] and whose physicians have or will in the future prescribe the drug Retrovir for their treatment and who do not meet the medical criteria set forth in [Missouri's Medicaid rule] for Medicaid coverage of AZT.
 
 
 12
 The trial court held that defendants' rule limiting Medicaid coverage of AZT to only those recipients who meet certain diagnostic criteria or conditions violated federal Medicaid law, 42 C.F.R. Secs. 440.230(b), 440.240(b), and 42 U.S.C. Sec. 1983. The district court found that AZT is medically necessary treatment for individuals in the plaintiff class who do not fit within the restrictive criteria of Missouri's Medicaid rule. The court, therefore, enjoined Missouri officials from denying coverage of AZT to "persons eligible for Medicaid and infected with the AIDS virus."
 
 II.
 
 13
 In reviewing nonadjudicatory federal agency action, a court is limited to deciding whether the action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). "Although the answer is far from clear," at least one court has assumed without deciding that a court "is entitled to review the actions of a state agency administering federal Medicaid funding as it would review the actions of a federal agency." Mississippi Hosp. Ass'n, Inc. v. Heckler, 701 F.2d 511, 516 (5th Cir.1983). See also Clallam County v. Washington State Dept. of Transp., 849 F.2d 424, 429 n. 7 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 790, 102 L.Ed.2d 782 (1989).
 
 
 14
 Title XIX of the Social Security Act, 42 U.S.C. Secs. 1396-1396s, commonly known as the Medicaid Act, is a federal-state cooperative program designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of medical care. Although a state's participation is voluntary, once a state chooses to participate in the program it must comply with federal statutory and regulatory requirements, Alexander v. Choate, 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714 n. 1, 83 L.Ed.2d 661 (1985); Ellis v. Patterson, 859 F.2d 52, 54 (8th Cir.1988); 42 U.S.C. Sec. 1396a, including the requirement that participating states provide financial assistance for in-patient hospital services, out-patient hospital services, laboratory and x-ray services, skilled nursing facilities and physicians' services. See 42 U.S.C. Sec. 1396a(a)(10) and Sec. 1396d(a)(1)-(5).
 
 
 15
 The participating state may also elect to provide other optional medical services such as prescription drugs. See 42 U.S.C. Sec. 1396d(a)(12). Once a state chooses to offer such optional services it is bound to act in compliance with the Act and the applicable regulations in the implementation of those services, see Ellis v. Patterson, supra, 859 F.2d at 56; Meyers v. Reagan, 776 F.2d 241, 243 (8th Cir.1985), including the requirement that "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. Sec. 440.230(b).
 
 
 16
 Although a state has considerable discretion in fashioning its Medicaid program, the discretion of the state is not unbridled: "[A state] may not arbitrarily deny or reduce the amount, duration, or scope of a required service * * * to an otherwise eligible recipient solely because of the diagnosis, type of illness or condition." 42 C.F.R. Sec. 440.230(c). "[A]ppropriate limits [may be placed] on a service based on such criteria as medical necessity or utilization control procedures." Id. at Sec. 440.230(d). Moreover, the state's plan for determining eligibility for medical assistance must be " 'reasonable' and 'consistent with the objectives' of the Act." Beal v. Doe, 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977) (quoting 42 U.S.C. Sec. 1396a(a)(17)). This provision has been interpreted to require that a state Medicaid plan provide treatment that is deemed "medically necessary" in order to comport with the objectives of the Act. See id. at 444-45, 97 S.Ct. at 2370-71 ("serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage"); Pinneke v. Preisser, 623 F.2d 546, 548 n. 2 (8th Cir.1980).
 
 
 17
 In the present case, defendants argue that their reliance on the FDA's approval statement in limiting coverage of AZT to only those patients who meet certain medical criteria is a reasonable exercise of their discretion to place limitations on covered services based on medical necessity and utilization controls. We do not find this argument persuasive.
 
 
 18
 Contrary to defendants' assertions, FDA approved indications were not intended to limit or interfere with the practice of medicine nor to preclude physicians from using their best judgment in the interest of the patient. Instead, the FDA new drug approval process is intended to ensure that drugs meet certain statutory standards for safety and effectiveness, manufacturing and controls, and labeling, 21 C.F.R. Sec. 314.105(c) (1988), and to ensure that manufacturers market their drugs only for those indications for which the drug sponsor has demonstrated "substantial evidence" of effectiveness. Id. at Sec. 314.126.
 
 
 19
 According to a drug bulletin issued by the FDA,
 
 
 20
 The [Food, Drug and Cosmetic] Act does not, * * * limit the manner in which a physician may use an approved drug. Once a product has been approved for marketing, a physician may prescribe it for uses or in treatment regimens or patient populations that are not included in approved labeling. Such "unapproved" or, more precisely, "unlabeled" uses may be appropriate and rational in certain circumstances, and may, in fact, reflect approaches to drug therapy that have been extensively reported in medical literature.
 
 
 21
 The term "unapproved uses" is, to some extent, misleading. It includes a variety of situations ranging from unstudied to thoroughly investigated drug uses * * *. [A]ccepted medical practice often includes drug use that is not reflected in approved drug labeling. With respect to its role in medical practice, the package insert is informational only.
 
 
 22
 "Use of Approved Drugs for Unlabeled Indications," 12 FDA Drug Bulletin 4 (April 1982).
 
 
 23
 Thus, the fact that FDA has not approved labeling of a drug for a particular use does not necessarily bear on those uses of the drug that are established within the medical and scientific community as medically appropriate. It would be improper for the State of Missouri to interfere with a physician's judgment of medical necessity by limiting coverage of AZT based on criteria that admittedly do not reflect current medical knowledge or practice.
 
 
 24
 It is also defendants' position on appeal that prescribing AZT outside the FDA approved indications is per se "experimental" in the sense that there is no scientific data derived from clinical trials documenting the efficacy and safety of AZT use outside the FDA guidelines. According to defendants, because such AZT use is experimental, it can never be deemed medically necessary treatment.
 
 
 25
 In our view, defendants' definition of "experimental" in this context is overly broad. In Rush v. Parham, 625 F.2d 1150 (5th Cir.1980), the Fifth Circuit, in considering the "experimental" nature of treatment for purposes of Medicaid coverage, defined "experimental" as a treatment not "generally accepted by the professional medical community as an effective and proven treatment for the condition" or "rarely used, novel or relatively unknown." Id. at 1156 n. 11.
 
 
 26
 Under the Rush definition, the prescription of AZT beyond its labeled indications is not experimental. The record here establishes that physicians commonly prescribe AZT for patients who have neither a history of PCP nor a CD4 count below 200. Plaintiffs' experts stated that based on their own practice, professional literature, conferences, and contacts with other physicians, AZT is generally accepted by the medical community as an effective and proven treatment for AIDS patients who do not meet the criteria in the FDA indications. Dr. J. William Campbell, a specialist in infectious diseases at Washington University School of Medicine in St. Louis, stated in his affidavit that,
 
 
 27
 AZT is the only treatment approved for persons with AIDS or ARC. * * * AZT is generally accepted by the professional medical community, and specifically by specialists in infectious diseases as an effective and proven treatment for HIV infection, including HIV infection where there is absent a history of PCP or a T4 helper/inducer lymphocyte count below 200, but where other of the AIDS-indicator diseases recognized by the Centers for Disease Control are present. * * * In the exercise of their professional medical judgment, doctors commonly prescribe AZT for patients not meeting [the FDA] criteria.
 
 
 28
 Defendants' expert, Dr. John Mills, a professor of medicine at the University of California at San Francisco, does not controvert the affidavits of plaintiffs' experts in which they conclude that AZT may be medically necessary for AIDS patients who do not meet the restrictive diagnostic criteria in Missouri's regulation. Although Dr. Mills stated that the use of AZT beyond labeled indications was experimental in the sense that scientific studies had not conclusively determined its effectiveness, Dr. Mills agreed that "doctors commonly exercise professional medical judgment and prescribe drugs for uses not within the indications articulated by the FDA." Specifically with regard to AZT, Dr. Mills stated that "doctors commonly prescribe AZT for patients not meeting those two criteria" (history of PCP or CD4 count below 200) and in fact, Dr. Mills himself testified that he has prescribed AZT outside the FDA indications.
 
 
 29
 Our decision in Pinneke v. Preisser, 623 F.2d 546 (8th Cir.1980), is controlling on the issue presently before us. In Pinneke, the Iowa Medicaid agency had a policy which stated "an irrebuttable presumption that the procedure of sex reassignment surgery can never be medically necessary when the surgery is a treatment for transsexualism," and accordingly denied Medicaid benefits for such surgery. Id. at 549. However, because sex reassignment surgery was the only available treatment for transsexualism, the Eighth Circuit held that Iowa's policy denying Medicaid coverage for sex reassignment surgery, where it was deemed medically necessary by the applicant's own physician, conflicted with the objectives of the Medicaid program. The court held, "a state plan absolutely excluding the only available treatment ... for a particular condition must be considered an arbitrary denial of benefits based solely on the 'diagnosis, type of illness, or condition.' " Id. Relying on Beal v. Doe, supra, 432 U.S. at 445 n. 9, 97 S.Ct. at 2371 n. 9, this court emphasized the importance of professional medical judgment in the determination of medical necessity. "The decision of whether or not certain treatment or a particular type of surgery is 'medically necessary' rests with the individual recipient's physician and not with clerical personnel or government officials." Pinneke v. Preisser, supra, 623 F.2d at 550. See also S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Admin.News 1943, 1986, ("the physician is to be the key figure in determining utilization of health services").
 
 
 30
 As in Pinneke, Missouri's Medicaid rule constitutes an irrebuttable presumption that AZT can never be medically necessary treatment for AIDS patients who have neither a history of PCP nor a CD4 count below 200. The record here establishes that such a presumption is unreasonable in light of the widespread recognition by the medical community and scientific literature that AZT is the only known antiviral treatment for individuals with AIDS.
 
 
 31
 The Medicaid statute and regulatory scheme create a presumption in favor of the medical judgment of the attending physician in determining the medical necessity of treatment. In denying coverage of AZT to the plaintiff class, the defendants have done nothing to overcome that presumption except to rely on the FDA approval process in a manner expressly rejected by the FDA. In the face of widespread recognition by the medical community and the scientific and medical literature that AZT is the only available treatment for most persons with AIDS, we find that Missouri Medicaid's approach to its coverage of the drug AZT is unreasonable and inconsistent with the objectives of the Medicaid Act. As in Pinneke, this approach "reflects inadequate solicitude for the applicant's diagnosed condition, the treatment prescribed by the applicant's physicians, and the accumulated knowledge of the medical community." Pinneke v. Preisser, supra, 623 F.2d at 549.
 
 
 32
 In sum, we hold that pursuant to the objectives of the Act, Missouri Medicaid may not deny coverage of AZT to AIDS patients who are eligible for Medicaid and whose physicians have certified that AZT is medically necessary treatment.
 
 
 33
 The district court's order enjoining defendants from denying the coverage of AZT is overly broad in that it did not require certification by the patient's doctor of the medical necessity of the treatment. Accordingly, the district court is instructed to modify its order consistent with this opinion.
 
 
 34
 As modified, the judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE WILLIAM H. TIMBERS, United States Senior Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 Plaintiffs premised jurisdiction in the district court on 28 U.S.C. Sec. 1331 (original jurisdiction of all civil matters arising under the Constitution, laws, or treaties of the United States) and 28 U.S.C. Sec. 1343(a)(3) and (4) (original jurisdiction of all civil actions to redress the deprivation, under color of State law, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights or civil rights of all persons within the jurisdiction of the United States)
 Jurisdiction of this court is invoked pursuant to 28 U.S.C. Sec. 1291.