Frances DeLUCA, Ida Rozenberg Percell Hicks, Percy Brienza, Seymour Yelovich, David Borinsky, Bertha Goldman, Maria Rivera, Sylvia Cohen, Adelina Ponce, and Jean Freedman, on behalf of themselves and all others similarly situated, and Ben Kaplan, Mary Meyers, and Anna D'Onofrio, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Marva Livingston HAMMONS, as Commissioner of the New York City Department of Social Services; and Brian J. Wing, as Acting Commissioner of the New York State Department of Social Services, Defendants.

No. 95 Civ. 7903 (LMM).

United States District Court, S.D. New York.

June 7, 1996.

Valerie J. Bogart, Jonathan A. Weiss, Legal Services for the Elderly, New York City, Scott A. Rosenberg (Donna H. Lee, of counsel), The Legal Aid Society, Civil Appeals and Reform Unit, New York City, Molly S. Boast, Jonathan A. Damon, LeBoeuf, Lamb, Greene & MacRae, New York City, for Plaintiffs.

Dennis C. Vacco, Attorney General of the State of New York, New York City, for Defendants.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

### I. *Introduction*

This action is brought by Plaintiffs to challenge the legality of N.Y.Comp.Codes R. & Regs. tit. 18, ("18 N.Y.C.R.R."), § 505.14(a)(6)(ii)(*b* ) ("the Initial Cap Regulation"), a New York state regulation that limits the number of home-care attendant hours that can be allocated to Medicaid recipients who are initial applicants for home care.[1] The Plaintiffs, some of whom are subject to the Regulation,[2] are elderly and infirm resi-

---

1. On May 10, 1996, Plaintiffs served a Supplemental Class Action Complaint, which the State answered. On May 31, 1996, Plaintiffs applied for leave to amend the Supplemental Class Action Complaint. Leave is denied. The Court does not perceive a need for an amendment in order to reach the issues raised by the motions before it.

2. The New York State Department of Social Services' "Fair Hearing" determinations in the cases of Ben Kaplan (Kaplan Decl., May 9, 1996, Ex. I) and Mary Myers (Myers Decl., May 9,

dents of New York City who require personal care services for more than four hours per day (28 hours per week). Plaintiffs ask this Court to find the Initial Cap Regulation in violation of federal law and to enjoin permanently its application.[3]

The regulation under review is applied by Defendants Marva Livingston Hammons, Commissioner of the New York City Department of Social Services, ("the City" or "HRA"), and overseen by Brian J. Wing, Acting Commissioner of the New York State Department of Social Services ("the State" or "DSS"). The State, but not the City, opposes Plaintiffs' motion regarding this regulation.

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, granting original jurisdiction over all civil matters arising under the Constitution, laws, or treaties of the United States.

## II. *Standard of Review*

 The determination of whether the Initial Cap Regulation violates federal law is an "issue of law, subject to *de novo* review in federal court." *Turner v. Perales*, 869 F.2d 140, 141 (2d Cir.1989). A state agency's interpretation of federal law requirements is not entitled to the same deference that would be accorded to a federal agency's interpretation. *Id.* (distinguishing "arbitrary and capricious" standard of review, *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), which applies to federal agency interpretations of federal law, from standard of review appropriate for state agency interpretations of federal law). "In passing on the validity of a state Medicaid plan under federal law, the court must determine whether the plan is procedurally and substantively in compliance with the requirements of the Federal Medicaid Act and its implementing regulations." *AMISUB (PSL), Inc. v. Colorado Dep't of Social Servs.*, 879 F.2d 789, 795 (10th Cir. 1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

## III. *Federal Medicaid Law Requirements*

Title XIX of the Social Security Act of 1965, 42 U.S.C. §§ 1396 *et seq.*, ("the Medicaid Act"), establishes a joint federal-state funding program that provides medical assistance to persons whose income and resources are insufficient to meet the costs of medical care. The Federal Government approves a state plan for the funding of medical services for the needy and then subsidizes a significant portion of the financial obligations the State has agreed to assume. A state's participation is voluntary, but once a state chooses to participate in the program, it must comply with federal statutory and regulatory requirements. *See Alexander v. Choate*, 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714 n. 1, 83 L.Ed.2d 661 (1985); 42 U.S.C. § 1396a.

Federal Medicaid law sets minimum standards for the scope of services provided by a state, including services provided at the state's option such as personal care services. *See Weaver v. Reagen*, 886 F.2d 194, 197 (8th Cir.1989). Since 1973, New York State has opted to provide personal care services as an integral component of its Medicaid program. *See* New York Soc.Serv.Law § 365–a(2)(e); 18 N.Y.C.R.R. § 505.14; Hallock Aff., pp. 2–3. A state has considerable, but not unbridled, discretion in fashioning its Medicaid program: "[A state] may not arbitrarily deny

---

1996, Ex. E) both rely on the application of N.Y.C.R.R. § 505.14(a)(6)(ii)(*b*). Both find that the beneficiary under consideration does not require "total assistance" and conclude that: "Pursuant to Section 505.14(b) [sic] of the Regulations, set forth above [thus referring to N.Y.C.R.R. § 505.14(a)(6)(ii)(*b*)], the Appellant may receive more than four daily service hours in an initial authorization only if he [she] requires total assistance with toileting and/or walking and/or transferring and/or feeding." (Kaplan Decl., Ex. I, at 6; Meyers Decl., Ex. E., at 4.) In view of these explicit statements in the "Fair Hearing" determinations, the Court concludes that, contrary to the State's contentions that the

regulation has not been applied to any of the named Plaintiffs, the challenged regulation was in fact applied, at least in the cases of Mr. Kaplan and Ms. Myers.

3. Plaintiffs also argue that arbitrary eligibility standards deprive Plaintiffs of due process of law and equal protection, in violation of the Fourteenth Amendment of the U.S. Constitution. Because the Court finds that the regulation violates federal Medicaid law and regulations, it need not reach the question of whether the Initial Cap Regulation is unconstitutional.

**134**

or reduce the amount, duration, or scope of a required service to an otherwise eligible recipient solely because of the diagnosis, type of illness or condition." 42 C.F.R. § 440.230(c). However, a state may place "appropriate limits on a service based on such criteria as medical necessity or utilization control procedures." 42 C.F.R. 440.230(d). A state's plan for determining eligibility for medical assistance must be " 'reasonable' and 'consistent with the objectives' of the Act." *Beal v. Doe,* 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977) (quoting 42 U.S.C. § 1396a(a)(17)).

## IV. *The Challenged Regulation*

■ The challenged regulation, 18 N.Y.C.R.R. § 505.14(a)(6)(ii)(*b* ), reads in relevant part:

The initial authorization for Level II [personal care home attendant] services shall not exceed four hours per day or 28 hours per week.[4]

This regulation has been in effect for eleven years. (Hallock Aff., p. 304). Plaintiffs contend that the Initial Cap Regulation violates federal Medicaid laws and regulations, which require that Medicaid services provided by a participating state "be sufficient in amount, duration, and scope to reasonably achieve its purpose," 42 C.F.R. § 440.230(b); *see also* 42 U.S.C. § 1396a(a)(10)(C)(i)(II); that services be "prescribed by a physician in accordance with the recipient's plan of treatment," 42 C.F.R. § 440.170(f); and that the amount of medical assistance made available to a recipient of such services "shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual." 42 U.S.C. § 1396(a)(10)(B)(i); 42 C.F.R. § 440.240(b). Plaintiffs contend that an arbitrary limit on hours of personal care services—particularly the relatively low limit of four hours per day—in the face of evidence that an applicant's need for assistance exceeds four hours per day, violates these laws and regulations.

In New York, the determination of which Medicaid applicants require home care services is governed by an assessment procedure, set forth at 18 N.Y.C.R.R. § 505.14(b). These procedures mandate that a series of assessments, including an assessment and recommendation by the treating physician, a social assessment undertaken by a local district caseworker, a nursing assessment, and in certain cases an assessment by the local medical director of the district, be undertaken. Once completed, the local district determines whether the individual is eligible for personal-care services, and if so, the amount of medically necessary services.[5]

An applicant already receiving home-care services is given the number of home-care hours determined to be appropriate based on the statutory assessment procedure. Initial applicants for home-care services are also assessed according to the specifications of 505.14(b) but, in addition, are subject to the

---

4. An exception to this requirement may be made under the following conditions:
 (1) The patient requires total assistance with toileting and/or walking and/or transferring and/or feeding as a result of the following: (i) short-term assistance is required due to an acute medical episode; and/or (ii) more intensive service is required during a post-hospitalization period; and/or (iii) assistance provided by informal caregivers is unavailable, withdrawn, reduced or unacceptable to the patient; and/or (iv) adaptive equipment, self-help devices, and structural modifications in the patient's residence are unavailable or lacking; and/or (v) monitoring of the patient's safety is required as part of a plan of care for a nonself-directing patient under the conditions specified in clauses (a)(4)(ii)(a)–(c) of this section; and/or (vi) additional hours of services for routine, supportive assistance are required by the patient because of the degree of his/her physical disability. (18 N.Y.C.R.R. § 505.14(a)(6)(ii)(*b* ))
 505.14(a)(2)(i) & (ii) defines "some" and "total" assistance as follows:
 (i) Some assistance shall mean that a specific function or task is performed and completed by the patient with help from another individual.
 (ii) Total assistance shall mean that a specific function or task is performed and completed for the patient.

5. The maximum amount of service authorized is "continuous 24–hour services," known as "split shift," in which two aides each work one 12–hour shift each day, or 168 hours per week total. A lesser form of 24–hour service is "sleep-in" care, in which one aide works all day and sleeps at the individual's home, providing only occasional services during the night.

Initial Cap Regulation. So, for example, if an initial applicant's treating physician, nurse, and social worker determine that the patient needs eight hours per day (56 hours per week) of home-attendant services, this recommendation is ignored to the extent that it exceeds the cap set forth at 18 N.Y.C.R.R. § 505.14(a)(6)(ii)(*b* ). Only patients who are determined to need "total assistance," as defined by 18 N.Y.C.R.R. § 505.14(a)(6)(ii)(*b* )(*1* ), are exempt from the cap.

The State makes several arguments in defense of the hour cap on initial applicants. The first is that local districts lack actual *experience* with, in contrast to *information regarding,* initial applicants:

> The Department's imposition of an initial cap on the amount of hours of personal care services applicants may receive is based upon the inherent unfamiliarity local districts have with the cases of applicants, as opposed to those of individuals already receiving services. Although the district has the benefit of certain professional assessments when it initially evaluates the level of care required by home care applicants, it has no experience actually managing their care. In contrast, when reevaluating home care cases, the local district has had an opportunity to gauge the needs of the recipient through personal experience, and therefore is better able to quantify the amount of care required. (State Def.Memo in Supp., p. 3)

The State's attempt to rationalize the differential treatment of initial applicants is unpersuasive for several reasons. First, the local district has several evaluations, conducted by specialized professionals whose recommendations for care are based on their deter-

minations of the applicant's physical and mental limitations, available to it at the time when home care services are initially to be authorized. While the information compiled regarding Medicaid recipients who have been receiving home-care services for years is perhaps superior to the information available regarding initial applicants for home-care services, the information compiled regarding initial applicants is hardly inadequate. It is significant that the State considers these evaluations entirely adequate when, for example, the initial applicant is determined to need no more than four hours per day of home care services. Similarly, the evaluations are considered adequate if the applicant is determined to need total assistance, thus falling within the exception to the cap. It is only for the applicant who needs more than four hours per day of home care, but who does not meet the "total assistance" exception, that the evaluations are considered inadequate. No reason has been given by the State as to why the evaluations are considered sufficiently accurate in some circumstances but not in others.

Second, the legitimacy of the initial applicant/reauthorized applicant distinction articulated by the State is called into question by the State's own response to concerns raised regarding the potential unfairness of an arbitrary hour cap. The State argues that applicants who are prejudiced by the cap can mitigate its effect by reapplying immediately for home-care services—thus allegedly escaping the categorization of their status as "initial" and thereby avoiding application of the cap. (Hallock Aff., para. 33; State Def.Mem. in Supp., p. 10). This "solution," while flawed in various ways,[6] calls into question the State's articulated justification for the

---

**6.** This back-door procedure to avoid application of the Initial Cap Regulation unduly burdens the applicant and the system. In order to be reevaluated, an applicant must get his or her treating physician to fill out a new M11q form detailing the applicant's current medical condition. The local district is empowered to authorize an increase in services only if the applicant has undergone a change in circumstances or medical condition. The only change in condition would be the fact that the applicant is no longer technically "initial." An evaluator could easily find that this "change" does not qualify the applicant for reevaluation. Even if an increase is granted, this procedure does not substitute for an adequate initial procedure. *Cf. Mayer v. Wing,* 922 F.Supp. 902, 911 (S.D.N.Y., 1996) (administrative appeal is no substitute for proper prior procedures at agency level). Nor does this procedure appear to comply with 42 U.S.C. § 1396a(a)(19), which requires that a state Medicaid plan "provide such safeguards as may be necessary to assure [that] the eligibility for care and services under the plan will be determined, and such care and service will be provided, in a manner consistent with simplicity of administration and the best interests of recipients."

cap—that "experience" with applicants is necessary to determine accurately how many hours in excess of four per day should be authorized. If the State is capable of determining the appropriate number of home-care hours for a "reauthorized" applicant, who only days before was an "initial" applicant, the State should have no difficulty in offering an individualized need assessment from the outset.

A final reason proffered by the State in support of the cap is that without such a limitation, Medicaid recipients would misrepresent their condition to receive hours in excess of their needs:

> individuals applying for Medicaid home care naturally can be expected to seek a maximum, even excessive, entitlement, as might applicants for any program furnishing assistance with items such as house cleaning, laundering and meal preparation. Under such circumstances, it is rational to require that home care applicant cases be scrutinized to avoid unnecessary authorizations of home care hours. The Department's requirement that a need be found for total assistance with one of several tasks before in excess of 28 hours per week of care care [sic] is initially authorized reasonably serves that function. (State Def.Mem. in Opp. p. 15–16)

The State's argument that recipients of Level II home-care services can be expected to try to obtain "excessive" help with housecleaning and laundry is suspect for two reasons. First, initial applicants do not determine for themselves the level of home-care that they would desire; an applicant's "prescription" for home-care services is determined by various professionals assigned to evaluate the patient. Second, any initial applicant who is determined as needing only Level I home-care services, services limited to "the performance of nutritional and environmental support functions," such as cleaning the house, shopping, laundry, bill-paying, and food preparation, can receive a maximum of eight hours per week of home-care services, unless subject to an exception in which case they can receive a maximum of 12 hours per week. *See* 18 N.Y.C.R.R. § 505.14(a)(6)(i)(*b*) & (*c*). In the case before

this Court, the recipients have been determined as needing Level II home-care services. Level II services include assistance with vital tasks such as bathing, dressing, toileting, walking or otherwise transferring, meal preparation, and feeding. *See* 18 N.Y.C.R.R. § 505.14(a)(6)(i) & (ii). It is these services, when given to initial applicants, that are subject to the challenged hour cap. It is hard to imagine how a recipient could seek "excessive" assistance with performing these basic, life-sustaining functions.

While the State may introduce reasonable utilization control procedures to limit unnecessary utilization of Medicaid services, *see* 42 C.F.R. 440.230(d); 42 U.S.C. § 1396a(a)(30)(A), the arbitrary hour cap is not an appropriate means of doing so. *Cf. Weaver v. Reagen,* 886 F.2d 194, 199–200 (8th Cir.1989) (state's refusal to fund AZT, in the face of medical judgement of attending physician that patient's need for AZT was a medical necessity, found to be unreasonable utilization control and inconsistent with the objectives of the Medicaid Act); *Allen v. Mansour,* 681 F.Supp. 1232 (E.D.Mich.1986) (requirement of two-year abstinence from alcohol prior to Medicaid funded liver transplant is arbitrary and unreasonable and not a valid method of cost containment or "utilization control"). The pre-allocation evaluations serve as an appropriate safeguard against this type of abuse. An arbitrary cap placed on some, but not all, initial applicants and on no reauthorized applicants is not appropriate in that it discriminates among applicants and intentionally fails to take into account the amount of services that have been determined—through a costly and time intensive process that includes an evaluation by a treating physician—to be necessary for the health and safety of the patient. As such, the Initial Cap Regulation violates federal Medicaid law.

### V. *Conclusion*

For the above-stated reasons, the Court finds that 18 N.Y.C.R.R. § 505.14(a)(6)(ii)(*b*) violates federal Medicaid law. Pursuant to F.R.C.P. 54(b), the Court determines that there is no just reason for delay, and directs the entry of a judgment, in favor of Plaintiffs, on their claim that 18 N.Y.C.R.R.

§ 505.14(a)(6)(ii)(*b* ) violates federal Medicaid law, declaring 18 N.Y.C.R.R. § 505.14(a)(6)(ii)(*b* ) illegal and permanently enjoining its application.[7] This Order is stayed through June 12, 1996 in order to allow defendant Wing to apply for a further stay pending appeal, if he so chooses.

SO ORDERED.

---

**7.** It is not clear to the Court whether such a judgment, together with the Stipulation dated April 17, 1996, resolves all of the issues raised in the Complaint and Supplemental Complaint.

Counsel are to advise the Court, in writing, not later than June 17, 1996, as to what issues, if any, remain open.